T.C. Memo. 2012-346

UNITED STATES TAX COURT

SELVIA ZAKLAMA, ET AL.,[1] Petitioners <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket Nos.  9275-03, 9276-03,          Filed December 18, 2012.
             9277-03.

Esmat Zaklama, pro se.

Selvia Zaklama, pro se.

<u>Steven W. Ianacone</u> and <u>Joseph J. Boylan</u>, for respondent.

_____

[1]Cases of the following petitioners are consolidated herewith:  Selvia
Zaklama, docket No. 9276-03; and Esmat Zaklama, docket No. 9277-03.

[*2]      MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Chief Judge</u>:  These consolidated cases involve the Federal

income tax of Selvia Zaklama (Ms. Zaklama) for 1992 through 1997 and of Esmat

Zaklama (Mr. Zaklama) for 1995 through 1997.[2]  Respondent determined

deficiencies and additions to tax under sections 6651(a)(1) and (2) and 6654, after

determining that petitioners had not filed Federal income tax returns for the subject

years.[3]  Respondent determined the deficiencies using the bank deposits method of

income reconstruction and applying the income tax rates for married individuals

filing separate returns.  Respondent issued a separate notice of deficiency to each

petitioner, Ms. Zaklama's for 1992 through 1997 and Mr. Zaklama's for 1995

through 1997.

During these proceedings, petitioners prepared joint Forms 1040, U.S.

Individual Income Tax Return, for the subject years and gave those returns to

---

[2]The lead case involves Ms. Zaklama's 1992 through 1994 taxable years.
The case at docket No. 9276-03 involves Ms. Zaklama's 1995 through 1997
taxable years.  The remaining case involves Mr. Zaklama's 1995 through 1997
taxable years.  We use the term "subject years" to refer collectively to Ms.
Zaklama's 1992 through 1997 taxable years and to Mr. Zaklama's 1995 through
1997 taxable years.

[3]Unless otherwise indicated, section references are to the applicable versions
of the Internal Revenue Code (Code), Rule references are to the Tax Court Rules of
Practice and Procedure, and dollar amounts are rounded.

[*3] respondent. On the basis of those returns and a Court order that the returns were deemed admitted under Rule 91(f), respondent recalculated petitioners' deficiencies for the subject years as if they had filed joint returns for the subject years. Correspondingly, in order to reflect petitioners' desire to be taxed as if they had filed joint returns, respondent (in part through an amendment to answer filed in docket Nos. 9276-03 and 9277-03) increased the determined deficiencies and the additions to tax for 1995 through 1997. Respondent also conceded that petitioners are not liable for the additions to tax that respondent determined under section 6651(a)(2) and that Mr. Zaklama is not liable for $3,000 of an addition to tax that respondent determined under section 6651(a)(1). Respondent also conceded portions of the deficiencies and additions to tax for 1992 through 1994 determined in Ms. Zaklama's notice of deficiency to further take into account petitioners' desire to file joint returns for those years.

Currently, respondent asserts that the deficiencies and the additions to tax are as follows:

[*4]

|  |  |  | Additions to Tax |  |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
|------|------------|-----------------|-----------|
| 1992 | $160,224 | $35,056 | $6,524 |
| 1993 | 174,321 | 35,580 | 5,955 |
| 1994 | 196,190 | 39,048 | 9,277 |
| 1995 | 300,733 | 72,683 | 15,388 |
| 1996 | 390,767 | 87,692 | 18,994 |
| 1997 | 346,839 | 76,710 | 16,178 |

Petitioners assert that the deficiencies for the subject years are $96,084, $64,442, $85,823, $129,873, $139,969, and $101,872. Petitioners calculate these amounts by treating Ms. Zaklama's professional corporation, Selvia Zaklama, M.D., P.C. (SZMDPC), as the earner of income that respondent determined was Ms. Zaklama's self-employment income. Petitioners assert that if the Court disagrees with this treatment, the respective deficiencies are $108,656, $67,059, $126,860, $121,404, $154,258, and $117,884.

We decide the following issues:[4]

1. whether petitioners' gross income for the subject years includes nonemployee compensation of $483,591, $487,873, $536,145, $628,500, $694,986, and $815,963, respectively, that Ms. Zaklama realized from her self-employment, and whether petitioners may deduct self-employment business

---

[4]We decide these issues bearing in mind that issues and arguments not advanced on brief are considered abandoned. See Mendes v. Commissioner, 121 T.C. 308, 313-314 (2003); Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001).

[**\*5**] expenses in amounts greater than the $38,800 respondent allowed for each year. We hold that petitioners' gross income includes the self-employment income in the amounts stated and that petitioners may not deduct self-employment expenses in amounts greater than respondent allowed. We also decide whether the self-employment net income is subject to self-employment tax. We hold that it is;

2. whether petitioners' gross income for the subject years includes rental income of $21,113, $11,460, $13,428, $33,994, $57,166, and $22,272, respectively. We hold that it does. We also decide whether petitioners may deduct rental expenses in amounts greater than respondent allowed (which was zero for each year). We hold that they may deduct greater amounts to the extent stated;

3. whether petitioners' gross income for the subject years includes interest income of $480, $231, $148, $798, $593, and $653, respectively. We hold that it does;

4. whether petitioners' gross income for the subject years includes "unreported income" of $11,122, $22,520, $8,502, $155,523, $110,720, and $88,965, respectively.[5] We hold that it does;

---

[5]For this purpose, respondent used the description "unreported income" to refer to income that was neither nonemployee compensation, rental income, interest income, or income from withdrawals from retirement accounts.

**[*6]**   5.  whether petitioners' gross income for 1992 and 1996 includes $30,000 and $144,201 of withdrawals from retirement accounts, and to the extent it does, whether the 10% additional tax under section 72(t) applies to the withdrawals.  We hold that petitioners' gross income for 1992 and 1996 includes withdrawals from retirement accounts (and that the 10% additional tax under section 72(t) applies) to the extent stated;

6.  whether petitioners may deduct itemized deductions in amounts greater than respondent allowed (which was zero for each year).  We hold that they may not; and

7.  whether petitioners are liable for the additions to tax under sections 6651(a) and 6654 determined (and as adjusted) by respondent.  We hold that they are to the extent stated.

## FINDINGS OF FACT

I.  <u>Preface</u>

The parties stipulated certain facts and exhibits, and the Court deemed other facts and exhibits stipulated pursuant to Rule 91.  We find the stipulated facts accordingly, and we incorporate those facts and exhibits herein.

**[*7]** II.  Background

Petitioners are husband and wife, and they resided in New Jersey when they filed their petitions.  Each petitioner was born outside the United States, he in 1946 and she in 1953.  They moved to the United States in 1977.  They have three children, the oldest of whom (J.Z.) was born in 1979.  Each petitioner understands and clearly speaks English, which is his and her second language.

Petitioners did not file Federal income tax returns for the subject years.  During these proceedings, on or about January 10, 2005, petitioners prepared joint Forms 1040 for the subject years.  Petitioners gave those returns to respondent on or about January 27, 2005.  The returns reported no itemized deductions for the subject years.

III.  Petitioners' Professional Pursuits

Each petitioner is a physician.  Ms. Zaklama worked as an anesthesiologist during some or all of the subject years.  She worked primarily at Christ Hospital in New Jersey.  Ms. Zaklama is also the sole shareholder of a professional corporation, SZMDPC, which was incorporated in New Jersey on or about January 31, 1991.  Petitioners are its officers.  The record does not establish that SZMDPC has ever filed a Federal income tax return.  Ms. Zaklama provided few (if any) medical services through SZMDPC during the subject years.

**[*8]** For some or all of 1995 through 1997, Mr. Zaklama worked in New Jersey as a medical doctor.

IV. Bank Accounts

A. Overview

Petitioners were involved with various bank accounts during the subject years. These accounts included accounts in the name (or names) of: (1) Ms. Zaklama, (2) Mr. Zaklama, (3) both petitioners, (4) both petitioners and J.Z., or (5) SZMDPC. We refer to each account by its last four digits.

B. Accounts in Ms. Zaklama's Name

The following accounts were in the name of Ms. Zaklama during some or all of the subject years: checking account No. 1604 at First Fidelity Bank N.A. (FFB1604); savings account No. 2520 at First Fidelity Bank N.A. (FFB2520); and checking account No. 2740 at First Fidelity Bank N.A. (FFB2740).[6] Ms. Zaklama received the bank statements for FFB2740 in care of the anesthesia department at Christ Hospital.

C. Accounts in Mr. Zaklama's Name

The following accounts were in the name of Mr. Zaklama during some or all of the subject years: checking account No. 8531 at NatWest Bank (NWB8531);

---

[6]First Fidelity Bank N.A. is currently named First Union Bank.

**[\*9]** account No. 1216 at Trust Company of New Jersey (TC1216); account No. 5492 at Trust Company of New Jersey (TC5492); and brokerage account No. 1904 at PNC Brokerage Corp. (PNC1904).[7]

### D. Account in Both Petitioners' Names

The following account was in the names of both petitioners during some or all of the subject years:  checking account No. 9250 at Collective Bank (CB9250).[8] Petitioners opened CB9250 in January 1994.

### E. Accounts in SZMDPC's Name

The following accounts were in the name of SZMDPC during some or all of the subject years:  small business checking account No. 0488 at First Fidelity Bank N.A. (FFB0488); small business checking account No. 0991 at First Fidelity Bank N.A. (FFB0991); and checking account No. 5068 at First Savings Bank of New Jersey, S.L.A. (FSB5068).[9]  Ms. Zaklama opened FFB0488 as a small business checking account in March 1993.  Ms. Zaklama opened FSB5068 in April 1996.

---

[7]NatWest Bank is currently named Fleet Bank.  The record does not allow us to characterize either TC1216 or TC5492 as a savings account, a checking account, or something else (e.g., an individual retirement account (IRA)).

[8]Collective Bank is currently named Summit Bank.

[9]First Savings Bank of New Jersey, S.L.A., is currently named Richmond County Savings Bank.

**[*10]** F.  Account in Names of Each Petitioner and J.Z.

Checking account No. 3886 at Bank of America (BOA3886) was in the names of each petitioner and J.Z. during some or all of the subject years. Petitioners gave J.Z.'s Social Security number to Bank of America to record as the taxpayer identification number for BOA3886, and petitioners used funds in BOA3886 to pay J.Z.'s personal expenses.  No check deposited into BOA3886 was payable to J.Z.

G.  Other Account

Account No. 3721 at Bank of America (BOA3721) was a money market account in petitioners' names during 1994, and it was in the names of each petitioner and J.Z. during 1993 and 1995.  Petitioners gave Mr. Zaklama's Social Security number to Bank of America to record as the taxpayer identification number for BOA3721.

V.  Deposits Into Accounts

The deposits into (exclusive of interest paid on) the aforementioned accounts (exclusive of PNC1904, TC1216, and TC5492) during the subject years totaled the following amounts:

| [*11] Account | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 |
|---|---|---|---|---|---|---|
| BOA3721 | -0- | $3,206 | $2,000 | $875 | -0- | -0- |
| BOA3886 | $66,985 | 28,531 | 15,793 | 224,873 | $73,281 | $11,593 |
| CB9250 | -0- | -0- | 68,843 | 15,900 | 15,716 | -0- |
| FFB0488 | -0- | 400,296 | 221,847 | -0- | -0- | -0- |
| FFB0991 | -0- | -0- | -0- | 500 | -0- | -0- |
| FFB1604 | -0- | -0- | 415,339 | 769,501 | 519,925 | -0- |
| FFB2520 | -0- | -0- | -0- | 139,412 | 84,500 | -0- |
| FFB2740 | 483,616 | 157,654 | -0- | -0- | -0- | -0- |
| FSB5068 | -0- | -0- | -0- | -0- | 424,084 | 815,963 |
| NWB8531 | -0- | -0- | -0- | -0- | 33,483 | -0- |
| Total | 550,601 | 589,687 | 723,822 | 1,151,061 | 1,150,989 | 827,556 |

Respondent determined in Ms. Zaklama's notice of deficiency that she received the following interest during the subject years (paid on BOA3721, BOA3886, CB9250, FFB2520, and FFB2740, and on account Nos. 2064 (CB2064) and 0197 (FFB0197) at Collective Bank and First Fidelity Bank N.A., respectively):

| Account | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 |
|---|---|---|---|---|---|---|
| BOA3886 | -0- | $19 | $9 | -0- | -0- | -0- |
| BOA3721 | -0- | -0- | 106 | -0- | -0- | -0- |
| CB9250 | -0- | -0- | 20 | -0- | -0- | -0- |
| CB2064 | -0- | -0- | -0- | $7 | $48 | $35 |
| FFB0197 | $17 | 10 | -0- | -0- | -0- | -0- |
| FFB2520 | -0- | -0- | -0- | 462 | 243 | -0- |
| FFB2740 | 463 | 202 | 13 | -0- | -0- | -0- |
| Total | 480 | 231 | 148 | 469 | 291 | 35 |

Respondent determined in Mr. Zaklama's notice of deficiency that he received the following interest from 1995 through 1997 (paid by the U.S. Department of the

[*12] Treasury and on CB9250, NWB8531, and TC1216, and on account Nos. 5234 (NWB5234) and 8689 (NWB8689) at NatWest Bank:

| Account | 1995 | 1996 | 1997 |
|---------|------|------|------|
| U.S. Treasury | -0- | -0- | $589 |
| CB9250 | $52 | $8 | -0- |
| NWB5234 | -0- | -0- | 5 |
| NWB8531 | 1 | 20 | -0- |
| NWB8689 | 22 | 181 | -0- |
| TC1216 | 254 | 93 | 24 |
| Total | 329 | 302 | 618 |

VI. Rental Income

Petitioners owned interests in various real properties rented to third parties, and the third parties gave petitioners checks payable to (and endorsed by) one or both petitioners. Petitioners deposited most of the checks into their bank accounts. The total amounts of the checks and the accounts into which the checks were deposited are as follows:

| [*13] | Year | Bank Account | Deposited Rent |
|---|---|---|---|
| | 1992 | FFB3886 | $21,113 |
| | | | 21,113 |
| | 1993 | FFB3886 | 11,460 |
| | | | 11,460 |
| | 1994 | CB9250 | 12,553 |
| | | FFB3886 | 875 |
| | | | 13,428 |
| | 1995 | BOA3721 | 875 |
| | | BOA3886 | 9,545 |
| | | CB9250 | 1,500 |
| | | FFB1604 | 5,988 |
| | | | 17,908 |
| | 1996 | BOA3886 | 10,368 |
| | | CB9250 | 10,466 |
| | | FFB1604 | 8,916 |
| | | NWB8531 | 12,060 |
| | | | 41,810 |
| | 1997 | BOA3886 | 2,730 |
| | | | 2,730 |

Respondent determined that the checks deposited in 1992 through 1994 represented rental income to Ms. Zaklama and that the checks deposited in 1995 through 1997 represented rental income to petitioners in equal amounts.

Respondent also determined that one or both petitioners received rental income during 1995 through 1997 that was not deposited into a bank account. Respondent observed that petitioners received Forms 1099-MISC, Miscellaneous

[*14] Income, from the State of New Jersey (for rental assistance) and from a realty management company and compared the amounts of rent reported on these forms with the deposited funds received from these payers.  Respondent determined that the excess amounts were additional rent as follows:

|  | 1995 | 1996 | 1997 |
|---|---|---|---|
| Forms 1099-MISC from State of New Jersey | $6,950 | $6,324 | $5,320 |
| Forms 1099-MISC from management company | 12,900 | 15,295 | 14,222 |
| Total | 19,850 | 21,619 | 19,542 |
| Funds deposited into: |  |  |  |
| BOA3886 | -0- | (1,126) | -0- |
| CB9250 | -0- | (1,561) | -0- |
| FFB1604 | (3,763) | (2,116) | -0- |
| NWB8531 | -0- | (1,461) | -0- |
| Additional rent | 16,087 | 15,355 | 19,542 |

Respondent determined that each petitioner realized one-half of the total rental income for 1995, 1996, and 1997.  These amounts are as follows:

|  | 1995 | 1996 | 1997 |
|---|---|---|---|
| Deposited rent | $17,908 | $41,810 | $2,730 |
| Additional rent | 16,087 | 15,355 | 19,542 |
| Total rent | 33,995 | 57,165 | 22,272 |
| 1/2 of rent | 16,998 | 28,583 | 11,136 |

[*15] VII.  Transactions in Retirement Accounts

Ms. Zaklama withdrew $30,000 from a retirement account during 1992.[10] The trustee of the account, Keogh International Bond, issued Ms. Zaklama a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 1992.  The form stated that during 1992 Keogh International Bond had made a $30,000 early distribution to Ms. Zaklama from a retirement plan.

On January 2, 1996, Ms. Zaklama withdrew $92,830 from her money market retirement account at California Federal Bank F.S.B. (CFB3568).[11]  The bank issued Ms. Zaklama a Form 1099-R for 1996 reporting the distribution to her as an early withdrawal from a retirement plan.  On March 1, 1996, $92,830 was deposited into another one of Ms. Zaklama's money market retirement accounts at California Federal Bank F.S.B. (CFB9263).

During 1996 Mr. Zaklama withdrew $42,711 and $8,660 from his IRAs at Trust Company Bank (TCB5084) and Downey Savings & Loan (DSL5084),

---

[10]Although it would appear from the record that this account was a Keogh account, the parties argue in brief as if it were an IRA.  Our decisions would be the same regardless of whether this account was a Keogh account or an IRA.  We therefore follow the parties' lead and treat this account as if it were an IRA.

[11]The parties also treat this account as if it were an IRA.  We thus do likewise.

[*16] respectively.  The trustees of those accounts reported those amounts on Forms 1099-R as early distributions from retirement accounts.

VIII.  Audit

Neither petitioner maintained adequate records of his or her income and expenses for any of the subject years.  In or after 1999, respondent began an audit relating to the subject years and assigned the case to a revenue agent who specialized in calculating taxable income through the use of indirect methods, where records were inadequate to compute the income directly.

The revenue agent mailed each petitioner a letter at the start of the audit.  The letters notified petitioners that respondent had not received Federal income tax returns from them for the subject years and that respondent had determined that returns were due for those years.  The letters invited petitioners to meet with the revenue agent to provide oral and written information related to a determination of their tax liabilities for the subject years.  The revenue agent mailed a copy of the letter to each petitioner on one or more occasions shortly after the first mailing.

Ms. Zaklama never responded to the letters, and the letters mailed to her were never returned to respondent as undelivered.[12]  Mr. Zaklama responded after the second letter was sent to him, and he met with the revenue agent.  The revenue

---

[12]Ms. Zaklama testified that she did not receive any of these letters.  We did not find that testimony credible.

[*17] agent asked Mr. Zaklama's name and current address and whether respondent had previously audited any of his returns, questions that the revenue agent considered routine. Mr. Zaklama was confrontational and refused to answer any of those questions. The meeting was abruptly concluded, with Mr. Zaklama asking the revenue agent to supply him with the revenue agent's interview questions, a power of attorney form, and an information transcript (IRP document) listing the information returns (e.g., Forms 1099-MISC) that third parties had issued to respondent with respect to either petitioner's Social Security number or name. The revenue agent gave Mr. Zaklama that requested information. Petitioners never responded to respondent's requests for information. Respondent asked petitioners to, among other things, identify and provide information on the deposits into their bank accounts, including whether they were claiming that any deposit had a nontaxable source. Petitioners supplied no such information.

Respondent determined each petitioner's income for the subject years using an indirect method that analyzed petitioners' bank accounts. Respondent reviewed all of the bank statements for those accounts that he was able to obtain by way of summonses from third parties and analyzed the deposits that went into the accounts. Respondent initially summoned the payers shown on the IRP document to provide bank statements, deposit tickets, and deposited items that the payers possessed as to

**[*18]** the subject years. Respondent later summoned other banks from which petitioners had written checks deposited into the accounts listed on the IRP document to provide similar information. Respondent analyzed numerous deposit slips and checks connected with petitioners' financial accounts and noted the payers and notations on the checks. Respondent also noted the person or persons to whom the deposited checks were made payable and the person or persons endorsing the checks.

Respondent identified some deposits as having a nontaxable source (e.g., where a deposit was a transfer between petitioners' accounts) and gave petitioners credit for those items. Respondent determined that Ms. Zaklama was a self-employed anesthesiologist and that some of the deposited checks were from persons appearing to be Ms. Zaklama's patients or from insurance companies paying for medical services. Respondent also determined (including through an electronic search of real property records) that one or both petitioners owned rental real estate and that some of the deposits represented petitioners' receipt of rent on those properties. Respondent generally determined that the rental income reflected in the deposited checks was the income of the petitioner to whom the check was written, or if the check was ambiguous, to the petitioner who endorsed the check.

**[\*19]** Respondent also took into account Forms 1099-MISC that were issued to petitioners evidencing their receipt of rent.

Respondent generally characterized the taxable deposits as rental income or nonemployee compensation, to the extent that he was able to do so, and characterized other deposits as unreported income or income in the form of distributions from a retirement account. Respondent issued each petitioner one or more information document requests that specifically asked each to supply respondent with any deductions or other information that he should consider in the examination. Petitioners did not respond to those documents. Respondent mailed each petitioner one or more copies of the revenue agent's report of proposed adjustments, Form 4549, Income Tax Examination Changes. Neither petitioner directly responded to that mailing, and it was not returned to respondent as undelivered.

The appendix to this opinion contains a summary of respondent's bank deposits analyses.

IX. Notices of Deficiency

A. Ms. Zaklama

Respondent determined in Ms. Zaklama's notice of deficiency that she had nonemployee compensation of $483,591, $487,873, $536,145, $628,500, $694,986,

[*20] and $815,963 for the subject years, respectively. Respondent credited Ms. Zaklama with $38,800 of self-employment expenses for each of the subject years[13] and determined that the net income was subject to self-employment tax.

Respondent determined in Ms. Zaklama's notice of deficiency that she received rental income of $21,113, $11,460, $13,428, $16,997, $28,583, and $11,136 during the subject years, respectively. Respondent determined that she received interest income of $480, $231, $148, $469, $291, and $35 during those subject years. Respondent determined that she realized unreported income of $11,122, $22,520, $8,502, $50,003, $11,662, and $2,840 during the subject years.

Respondent further determined in Ms. Zaklama's notice of deficiency that she received premature withdrawals from her retirement accounts. Respondent determined that the withdrawals were $30,000 in 1992 and $92,830 in 1996. Respondent determined that these withdrawals were subject to the 10% additional tax under section 72(t).

---

[13]Respondent determined the $38,800 on the basis of information that he had verified for prior years in a previous audit of petitioners' returns. For each year respondent also credited Ms. Zaklama with the standard deduction applicable to the "Married filing separate" filing status (ranging from $3,000 for 1992 to $3,450 for 1997).

**[\*21]** B.  Mr. Zaklama

As to the subject years 1995 through 1997, respondent determined in Mr. Zaklama's notice of deficiency that he received rental income of $16,997, $28,583, and $11,136; interest income of $329, $302, and $618; and unreported income of $120,695, $110,020, and $88,250.  Respondent also determined in Mr. Zaklama's notice of deficiency that his 1996 gross income included $51,371 of withdrawals from a retirement account and that these withdrawals were subject to the 10% additional tax under section 72(t).

OPINION

I.  Preface

The term "gross income" for Federal income tax purposes includes all income from whatever source derived, see sec. 61(a), and sweeps broadly to include "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion", Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955); see also United States v. Burke, 504 U.S. 229, 233 (1992); Karns Prime & Fancy Food, Ltd. v. Commissioner, 494 F.3d 404, 408 (3d Cir. 2007), aff'g T.C. Memo. 2005-233.  Section 6012(a) generally requires that individual taxpayers who receive gross income greater than certain amounts file Federal income tax returns reporting that income.  Respondent determined that petitioners received

**[\*22]** substantial gross income during the subject years and failed to file Federal income tax returns for those years.

Section 6001 requires that taxpayers keep books and records which are sufficient to establish (among other things) their gross income, deductions, and credits and which allow the Commissioner to verify their correct tax liability. See Olive v. Commissioner, 139 T.C. __, __ (slip op. at 23) (Aug. 2, 2012); Campbell v. Commissioner, 134 T.C. 20, 28 (2010), aff'd, 658 F.3d 1255 (11th Cir. 2011); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978); sec. 1.6001-1(a), Income Tax Regs. Section 446(b) lets the Commissioner reconstruct a taxpayer's income using any method that in the Commissioner's opinion clearly reflects income when the taxpayer fails to maintain adequate books and records. See also Agnellino v. Commissioner, 302 F.2d 797, 798-799 (3d Cir. 1962), aff'g in part, vacating in part T.C. Memo. 1961-22; Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989). The Commissioner's reconstruction of a taxpayer's income need not be perfect but must be reasonable in the light of the setting at hand. See Agnellino v. Commissioner, 302 F.2d at 799; Petzoldt v. Commissioner, 92 T.C. at 687.

Respondent reconstructed petitioners' taxable income for each subject year using the bank deposits method after determining that petitioners lacked adequate records to determine their income. The bank deposits method is a well-established,

[*23] proper method of income reconstruction. See DiLeo v. Commissioner, 96 T.C. 858, 867-868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977); see also Bacon v. Commissioner, T.C. Memo. 2000-257, aff'd without published opinion, 275 F.3d 33 (3d Cir. 2001). The method assumes that all cash deposited into a taxpayer's bank accounts during a specific period is gross income, and it requires that the Commissioner take into account all nontaxable sources and deductible expenses that the Commissioner knows of to arrive at the taxpayer's taxable income. See DiLeo v. Commissioner, 96 T.C. at 868. A bank deposit is prima facie evidence of taxable income, and the Commissioner need not prove a likely source of that income.[14] See Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986). The bank deposits method is not invalidated even if the Commissioner's calculations are not entirely correct. See DiLeo v. Commissioner, 96 T.C. at 868.

Petitioners advance numerous challenges to respondent's reconstruction of their taxable income for the subject years. We proceed to decide those challenges. We pause first, however, to discuss petitioners' history in this Court and in these

---

[14]Petitioners, on the other hand, bear the burden of proving any error that they allege in respondent's determinations of income based on the bank deposits method. See Clayton v. Commissioner, 102 T.C. 632, 645 (1994).

**[\*24]** proceedings, and our perception of their testimony.  We then turn to decide

the issues at hand in the light of petitioners' challenges.

II.  Prior Proceedings

Petitioners are well-educated individuals who are no strangers to this Court.

Respondent has determined a deficiency in one or both of petitioners' Federal

income tax for every year from 1986 through 2002, and petitioners have previously

petitioned this Court to redetermine the deficiency for each of those years before

1992.[15]  See Zaklama v. Commissioner, docket No. 27841-90 (petitioners' 1986 tax

liability); docket No. 18474-91 (petitioners' 1987 tax liability);  docket No. 28167-

92 (petitioners' 1988 tax liability); docket No. 7455-93 (petitioners' 1989 tax

liability); docket No. 6461-97 (petitioners' 1990 tax liability); docket No. 15696-96

(petitioners' 1991 tax liability).

Some of the pre-1992 cases were resolved by the parties' filing of stipulated

decisions.  Some cases were dismissed for lack of jurisdiction on account of a

 petition filed untimely or in violation of the automatic stay resulting from a

bankruptcy filing.  One case was dismissed as to Ms. Zaklama for her failure to

---

[15]These cases involve 1992 through 1997.  Petitioners' 1998 through 2002 Federal income tax liabilities are currently before the Court in two other proceedings.  See Zaklama v. Commissioner, docket No. 7219-10 (Mr. Zaklama's 1998 through 2002 tax liability); docket No. 8451-10 (Ms. Zaklama's 1998 through 2002 tax liability).

**[\*25]** prosecute the case properly. In all of the pre-1992 cases, petitioners routinely represented themselves and on many occasions refused to comply with respondent's discovery requests and with this Court's orders. In addition, they routinely advanced unreasonable positions (e.g., in one case they filed a last-minute motion to continue, partly on the ground that the trial judge "is expected to be upset and become impartial in his trial decision next week" and that they intended to file a motion to recuse the trial judge on grounds that the judge had improperly dismissed a previous case of theirs).

III. Overview of These Proceedings

Each petition at hand was filed on June 16, 2003. Approximately six months later, the Court notified the parties that the cases would be tried on the Court's regular Newark session beginning on May 3, 2004, in New York, New York. On January 26 and February 9, 2004, respondent timely filed requests for admissions with respect to petitioners' items of unreported income as reflected in the notices of deficiency. Petitioners failed to respond to these requests, and the matters therein were deemed admitted pursuant to Rule 90(c). Petitioners also failed to comply with Court orders of March 19, 2004, granting respondent's motions to compel production of documents and responses to interrogatories.

**[\*26]** On April 22, 2004, petitioners moved for a continuance, partly on the ground that they were seeking to obtain counsel. When these cases were called for trial on May 3, 2004, petitioners were not prepared to try their cases, and the Court advised petitioners that they were in default. The Court gave petitioners 30 days to seek relief from the defaults, preconditioned on their stipulating on or before May 5, 2004, records in respondent's possession, their retaining of counsel who entered appearances for petitioners before June 2, 2004, and their presenting to respondent, on or before June 2, 2004, all documentation showing deductions and their contemporaneous filing of a motion to vacate the deemed admissions. The Court informed petitioners that there would be "No more continuances. No more extensions." The Court also addressed Ms. Zaklama and informed her:

> Mrs. Zaklama, your husband cannot represent you as a matter of law, and he has been representing you very poorly as a matter of fact. You have to take hold of this case. These two cases together total $2 million plus interest going back as far as 1993, and you are in default so you're going to have to get counsel or at least take this in your own hands.
>
> \*     \*     \*     \*     \*     \*     \*
>
> You have deemed admitted most of the income, which was apparently made by bank deposits. You have not complied with the Court's Orders. You're in default.
>
> Now, you really need a lawyer. If you don't get a lawyer, the default will become a judgment against you for that amount of money. \* \* \* This is your last chance, and I mean it.

[*27]          \*    \*    \*    \*    \*    \*    \*

You cannot rely on your husband.  First, he's not authorized as a matter of law.  Second, if he were a lawyer, I'd remove him because he's incompetent as a lawyer.

On June 2, 2004, Steven Jay Jozwiak entered his appearances for petitioners in these cases.  By notices dated August 20, 2004, these cases were set for trial at the Court's January 24, 2005, regular trial session in New York, New York (Newark).

On November 9, 2004, respondent filed motions to compel responses to respondent's second request for documents and to respondent's second set of interrogatories, both served June 24, 2004.  By orders dated November 10, 2004, the Court granted respondent's motions, ordering petitioners to make complete answers to these interrogatories and to produce to respondent's counsel each and every document requested in the requests for production of documents by December 10, 2004.  The Court stated in each order that if petitioners failed to fully comply with the order, "this Court may impose sanctions pursuant to Tax Court Rule 104, which may include dismissal of this case and entry of \* \* \* decision[s] against petitioner[s]."

On December 20, 2004, respondent filed motions to impose sanctions on the grounds that petitioners had failed to comply with the Court's November 10, 2004,

[*28] orders, in that petitioners had not made available to respondent's counsel any of the responses or documents requested in respondent's second request for documents and to respondent's second set of interrogatories.  Also on December 20, 2004, respondent filed motions to review the sufficiency of petitioners' responses to respondent's first request for production of documents.  Respondent contended that petitioners had failed to comply with the Court's May 19, 2004, order to produce and make available to respondent's trial counsel all the documents requested in respondent's request for production of documents by April 2, 2004.[16]  By order dated December 27, 2004, the Court set respondent's motions to impose sanctions for hearing at the January 24, 2004, trial session.

On December 20, 2004, Mr. Jozwiak moved to withdraw as counsel, stating that "petitioner[s] and the attorney of record have irreconcilable views regarding the handling of th[ese] case[s].  Accordingly, the attorney of record is no longer able to effectively represent the interests of petitioner[s] in th[ese] case[s]."  Mr. Jozwiak stated in his motion that respondent's counsel had provided documents, contained in over eight boxes, to petitioners for their review, and that these documents consisted primarily of bank deposit slips and accompanying checks, along with

---

[16]Respondent's motion did indicate, however, that on December 10 and 12, 2004, Mr. Zaklama had delivered to respondent's office 11 packages of documents, in no particular order, with no index, and with no type of reference as to what they represented.

[*29] respondent's analysis of the taxable nature of these deposits. Mr. Jozwiak stated that he had reviewed and analyzed these records and had been provided copies of the summary sheets of respondent's bank deposit analysis of petitioners' income. Mr. Jozwiak indicated that he had "several concerns regarding the tax treatment of several deposits and contacted Petitioner for clarification of the source of a number of items that were deposited into Petitioner's bank accounts." Mr. Jozwiak indicated that he had forwarded to petitioners motions to compel responses to respondent's second request for documents and to respondent's second set of interrogatories as well as a copy of the Court's November 10, 2004, order granting respondent's motions, along with a copy of the Court's notices setting the cases for trial. Mr. Jozwiak indicated that he and Mr. Zaklama met with respondent's counsel on November 23, 2004, to review the stipulation of facts that respondent's counsel had prepared for these cases. Mr. Jozwiak indicated that notwithstanding his advising Mr. Zaklama of the Court's order that the parties work in good faith to enter into a stipulation of facts, Mr. Zaklama had refused to stipulate evidence, contending that it was "illegally obtained" in that the bank accounts obtained by respondent's counsel included both corporate and personal accounts.

On December 30, 2004, petitioners filed motions seeking 30-day extensions for complying with the Court's November 10, 2004, order. By orders dated

[**\*30**] December 30, 2004, the Court denied petitioners' motions to extend and ordered that petitioners were precluded from introducing into evidence any documents or materials which were not produced to respondent on or before January 10, 2004 (the same deadline stated in the Court's standing pretrial order for submitting to the opposing party evidentiary materials that have not been stipulated). By order dated January 5, 2005, the Court granted Mr. Jozwiak's motion to withdraw as counsel.

On January 6, 2005, respondent moved pursuant to Rule 91(f) to show cause why the facts and evidence set forth in respondent's proposed stipulation of facts should not be accepted as established. On January 18, 2005, petitioners filed responses. In orders dated January 19, 2005, the Court found that petitioners' responses were evasive and were not fairly directed to respondent's proposed stipulations and ordered that the matters covered in respondent's proposed stipulation of facts were deemed stipulated for purposes of these cases.

On January 24 and 25, 2005, the Court conducted an extensive pretrial hearing on respondent's motions to impose sanctions. At the commencement of the hearing, the Court reminded Ms. Zaklama that the previous year the Court had given her opportunity to hire an attorney, but that the attorney had withdrawn the previous December. The Court addressed Ms. Zaklama: "Let me remind you, Mrs.

[**31**] Zaklama, even though we've consolidated these cases for purposes of this hearing that your husband does not represent you in these matters. He's not legally entitled to represent you, and so we very much would like to hear what you have to say for yourself." Ms. Zaklama acknowledged, "I need an attorney to represent me."

Petitioners contended at the hearing that they had produced to respondent's counsel all documents in their possession that were responsive to respondent's discovery requests.[17] Petitioners complained that because Mr. Jozwiak had only recently withdrawn from their cases, they were unprepared to go forward with the scheduled trial. They represented that they had contacted a different attorney on the Friday before the scheduled trial on Monday. During the hearing, Ms. Zaklama spoke up to respond to a question. Mr. Zaklama tried to keep her from speaking

---

[17]Initially, petitioners disputed ever receiving respondent's second set of discovery requests, notwithstanding that Mr. Jozwiak, in his motion to withdraw as counsel, had explicitly acknowledged receiving these discovery requests and had represented that he had forwarded them to petitioners. Petitioners also asserted repeatedly that they maintained no books or records for their medical practices. Mr. Zaklama also contended that "I haven't got what he wants. If I don't have books, then I can't respond." Ms. Zaklama contended that she felt she did not need to respond to respondent's discovery requests because the IRS already had the materials sought. Mr. Zaklama stated that it was his position that respondent did not need the information because the Government already had this information. Each petitioner represented that he or she had no ownership interest in any properties.

**[*32]** and then tried to intervene, saying: "I'll explain and I'll let her speak after that." The Court insisted on hearing from Ms. Zaklama directly.

The next day, at the beginning of the hearing, Ms. Zaklama spoke up to say: "I have one main thing I want to mention to Your Honor." She stated: "I demand an attorney to be with me because I have no knowledge in the law or accounting to pursue. I cannot represent myself. My husband cannot represent me." Again, "I need an attorney * * *. I need somebody to defend me." Ms. Zaklama nevertheless participated meaningfully and coherently in the hearing and at one point articulately explained her positions as to her corporation and her separate tax identification number.

The Court concluded that petitioners had provided respondent certain documents that were responsive to respondent's first request for production of documents, even though they may have been inadequately organized and of questionable adequacy to substantiate petitioners' claims. With regard to respondent's second request for documents and to respondent's second set of interrogatories, petitioners offered various unconvincing excuses as to why they had not complied with the Court's November 10, 2004, orders. Petitioners contended that it was unfair for them to proceed without counsel. They requested, and the

[*33] Court reluctantly granted,[18] another continuance on the basis of petitioners' and Mr. Jozwiak's representations that on petitioners' behalf (although without re-entering his appearance) Mr. Jozwiak would work with respondent's counsel in going through and organizing the disorganized documentation that petitioners had previously submitted to respondent's counsel in response to respondent's discovery requests.[19]  In granting the continuance, the Court emphasized that petitioners would not be permitted to rely upon any materials that had not been previously exchanged with respondent by the January 10, 2005, date prescribed by the Court's standing pretrial orders and its December 30, 2004, orders.  Petitioners did not object to this procedure.

By order dated January 25, 2005, the Court granted respondent's motions to impose sanctions for petitioners' failure to comply with the Court's order dated November 10, 2004, with respect to respondent's second request for documents and to respondent's second set of interrogatories.  The Court ordered that petitioners

---

[18]Petitioners' request was based on a litany of grievances.  In response thereto, the Court stated:  "[W]e are convinced that you have engaged in delays, subterfuge and obstruction with ensuing detriments to have this case tried and your taxes finally determined and paid."

[19]At the conclusion of the hearing Mr. Jozwiak addressed the Court, stating that although he was not prepared to make an entry of appearance on behalf of petitioners, at their request he would be prepared to act as an "intermediary" between petitioners and respondent in reviewing the materials that petitioners claimed to have submitted to respondent.

**[\*34]** were precluded from offering into evidence any documents or materials that were not submitted to respondent on or before January 10, 2005, that would have been responsive to respondent's second requests for production of documents.

By separate order dated January 25, 2005, the Court consolidated these cases for purposes of trial, briefing, and opinion. The Court ordered that on or before March 11, 2005, petitioners resubmit to respondent's counsel those documents or materials upon which they sought to rely in support of claimed deductions or credits, and which had previously been submitted to respondent on or before January 10, 2005, except that the documents and materials were required to be organized and prepared in a manner as specified in the Court's order. The Court ordered that petitioners were precluded from introducing into evidence any documents or materials which would have been responsive to respondent's first request for production of documents which were not previously submitted to respondent on or before January 10, 2005, and which were not resubmitted to respondent on or before March 11, 2005, in the manner described in the order.

On February 18, 2005, petitioners moved the Court to take judicial notice of a complaint that petitioners had filed January 20, 2005, in a United States District Court against respondent's counsel and Mr. Jozwiak, stating causes of action for, among other things, conspiracy on the part of respondent's counsel and Mr.

[*35] Jozwiak and his accountant George Pappas "to coerce petitioners to sign stipulation of facts including the fraudulent unreported income as alleged by the IRS." Petitioners' motion also asked this Court to stay our proceedings pending resolution of the District Court case. By order dated March 15, 2005, the Court granted petitioners' motion to the extent that it sought judicial notice of the District Court case, and the Court denied the motion in all other regards.

By orders dated May 24, 2006, these cases were calendared for trial at the trial session of the Court scheduled to commence November 27, 2006, in New York, New York. The Court ordered, among other things, that "[t]he Court may refuse to receive in evidence any document or materials not stipulated pursuant to this Order and not previously exchanged between the parties pursuant to this Court's Orders of August 20, 2004, and January 25, 2005, unless otherwise agreed by the parties or allowed by the Court for good cause shown." The Court also ordered the parties by November 6, 2006, to file trial memoranda including identification of all witnesses and a brief summary of anticipated testimony. The order stated: "Witnesses who are not so identified will not be permitted to testify at the trial without leave of the Court upon sufficient showing of cause." In a joint status report dated May 26, 2006, the parties stated that in a series of meetings "the parties were able to stipulate to a number of additional documents presented by the

**[\*36]** petitioners" and that "petitioners submitted the final documents for the years 1995, 1996, and 1997."

On August 29, 2006, respondent filed pursuant to Rule 91(f) a motion to show cause why the facts and evidence set forth in respondent's proposed second stipulation of facts should not be accepted as established for purposes of these cases. The motion indicates that on January 18, 2006, respondent's counsel had mailed the proposed second stipulation of facts to petitioners at a New York address listed on petitioners' Form 8822, Change of Address. Respondent's motion indicates that Mr. Zaklama subsequently denied receiving the proposed second stipulation of facts and claimed that petitioners had a new address in Piscataway, New Jersey. Respondent's motion indicates that the proposed second stipulation of facts was then remailed to petitioners at the Piscataway, New Jersey, address. By order dated August 30, 2006, the Court ordered petitioners to show cause in writing on or before September 29, 2006, as to why the matters set forth in respondent's motion should not be deemed admitted for purposes of the pending cases.

In a status report filed September 1, 2006, petitioners claimed that respondent's first stipulation of facts had been mailed to the wrong address in New York and never reached them. Petitioners acknowledged receipt, however, of respondent's second and third stipulation of facts. The report states that

**[\*37]** "respondent has misrepresented to the Court that petitioners are objecting to the three stipulations of facts, when it is not." Petitioners' status report states that Mr. Zaklama had spent "several hours, moths [sic] ago, going through Bank Statements and checks resulting in a fruitless settlement". Petitioners stated that they would not be ready for trial on the November 27, 2006, scheduled date "because of petitioners' prior commitment for a family reunion in Germany."

On September 1, 2006, the Court received from petitioners a document captioned "Opposition to respondent's motion to show cause", dated August 31, 2006. This document, which apparently crossed in the mail with the Court's August 30, 2006, order, did not comply with the requirements of Rule 91(f)(2). In particular, petitioners' objections were not fairly directed to the matters proposed to be stipulated, as required by Rule 91(f)(2). In this document, petitioners stated, among other things, that before March 11, 2005, they had submitted "hundreds of pages" of materials to respondent and that on or about April 11, 2005, "a supplemental stack was submitted * * * based on a mutual agreement from respondent to ratify some of the prior receipts".

By order dated September 22, 2006, in response to petitioners' motion for an extension of time filed one week before, the Court extended until October 10, 2006, the date by which petitioners' response to the Court's August 30, 2006, order had to

**[\*38]** be received by the Court. On October 13, 2006, the Court received petitioners' untimely opposition to respondent's motion to show cause, dated August 29, 2006. In their response petitioners failed to show just cause for failure to stipulate the matters contained in respondent's proposed stipulation of facts. In their response, petitioners stated that they would stipulate many of respondent's exhibits, subject to the contingency that respondent would allow them certain expenses. By order dated October 23, 2006, the Court made its order to show cause, dated August 30, 2006, absolute and ordered the facts and evidence set forth in respondent's second stipulation of facts deemed stipulated for purposes of the pending cases.

On November 13, 2006, respondent moved in limine to exclude documents submitted by petitioners. Enclosed with respondent's motion were exhibits containing numerous documents, which respondent represented to be in the form and order that petitioners had originally submitted them to respondent. According to respondent's motion, petitioners had submitted some of these documents by the March 11, 2005, deadline set by the Court's January 25, 2005, order, but others had not been received until April 11, 2006, and others had not been received until after April 11, 2006. Moreover, respondent contended, petitioners had failed to organize any of these documents as required by the Court's January 25, 2005, order.

**[\*39]** On November 16, 2006, petitioners moved in limine to exclude any evidence relating to SZMDPC on the grounds that the Court lacks jurisdiction over the corporation. In their motion, petitioners included their opposition to respondent's motion in limine, stating, among other things, that the bank statements that were part of the subject of respondent's motion in limine included "all the cancelled checks paid out of the account for necessary and ordinary business expenses." Petitioners' motion stated: "The third stipulation of facts, although not signed, but hereby accepted and deemed stipulated to by this undersigned petitioners. Respondent has submitted this third stipulation of facts and cannot come now and observe objection thereto." On November 21, 2006, petitioners filed their opposition to respondent's motion in limine.

On November 27, 2006, the Court held pretrial hearings on the parties' motions in limine. Mr. Zaklama stated that all the documents that were the subject of respondent's motion in limine had been submitted to respondent's counsel before March 11, 2005. Respondent's counsel disputed this claim. The Court denied respondent's motion in limine on the ground that even if the documents were submitted after the March 11, 2005, deadline, respondent would not be prejudiced by the denial of respondent's motion in limine, since respondent had been in possession of the documents long enough to preclude any surprise. The Court

**[*40]** indicated, however, that we would be inclined to exclude from evidence, as prejudicial to respondent, any other documents that petitioners might present for the first time at trial. The Court also denied petitioners' motion in limine. At the conclusion of the hearing, the Court asked each petitioner if he or she wished to testify. Mr. Zaklama said yes, and answered yes to the question as to whether Ms. Zaklama wished to testify. The Court asked: "Do you have other witnesses you'd like to call?" Mr. Zaklama said he wanted to call J.Z. The Court granted respondent's motion in limine to exclude this witness as not being listed on a pretrial memorandum, finding that it would be prejudicial for that witness to be called.

On November 27 and 28, 2006, a trial was held in these cases. At the beginning of trial respondent moved to amend the answers to conform to the proof, on the ground that petitioners had elected to be taxed as if they were married filing jointly. The Court granted that motion after asking each petitioner for his and her position on the motion and hearing no objection. After respondent had examined respondent's first witness (the revenue agent who conducted the audit), the Court asked petitioners whether they wanted to cross-examine the witness. Mr. Zaklama said: "I will start first." He went through prolonged questioning of the witness, during which the Court repeatedly observed that Mr. Zaklama tried to give his

[*41] testimony in the form of questioning the witness.  Mr. Zaklama acknowledged that he was using questioning as a vehicle for his own testimony, stating that "I don't  see how I'm going to stand and ask myself questions".  At end of the first day of trial (i.e., the questioning of respondent's revenue agent), the Court explained to petitioners that each of them could testify the next day.

The next day, Mr. Zaklama stated that he wanted to call Ms. Zaklama as a witness.  The Court replied:  "That's fine, but it's best that you testify.  Now, you're not authorized to represent her, so the notion of your questioning Ms. Zaklama is not a good way to proceed".  After Mr. Zaklama's testimony, the Court asked Ms. Zaklama if she would like to testify.  "I don't have a lot to say except I'm not good in English, but I will express my feelings."

At the conclusion of the trial, the Court ordered posttrial briefs.

On May 24, 2007, Frank Agostino entered his appearance on behalf of petitioners.  On August 3, 2007, respondent filed respondent's opening brief.  On August 23, 2007, petitioners filed their opening brief and contemporaneously filed: (1) a motion for a new trial; (2) a motion requesting judicial notice of documents and facts; and (3) a motion to submit summary report.  On September 18, 2007, petitioners filed a motion to be relieved from stipulations of fact.  Respondent filed objections to each of these motions.

[*42] On November 10, 2008, Mr. Agostino filed a motion to withdraw as petitioners' counsel, partly on the ground of an alleged conflict of interest. Two weeks later, at the Court's direction, petitioners filed an offer of proof as to Ms. Zaklama's testimony as a fact witness. Mr. Agostino amended his motion to withdraw on December 17, 2008. On December 17 and 18, 2008, each petitioner filed a separate but largely identical opposition to the motion to withdraw. On December 18, 2008, respondent filed a response objecting to the motion to withdraw. On April 9, 2009, petitioners filed separate supplemental responses opposing Mr. Agostino's amendment to motion to withdraw as counsel.

In an 18-page order dated June 3, 2009, the Court denied Mr. Agostino's motion to withdraw and denied petitioners' motions requesting judicial notice and the motion to submit a summary report. The Court stated in the order that we would "permit the record to be reopened for the sole and limited purpose of allowing counsel to question Selvia Zaklama in the capacity of Esmat Zaklama's fact witness."

On June 21, 2009, Mr. Agostino filed a second motion to withdraw as counsel and on July 21, 2009, filed a supplement to his second motion to withdraw. On July 28, 2009, respondent filed a status report indicating, among other things, that petitioners had made an oral settlement offer, which respondent had requested

**[*43]** to be put in writing.  On August 7, 2009, the Court ordered the parties to file by August 28, 2009, a joint report describing the progress that had been made toward settling these cases.  The August 7, 2009, order directed that Mr. Agostino's second motion to withdraw as counsel would be held in abeyance pending receipt of the status report.

On August 26, 2009, Mr. Agostino and respondent's counsel filed a joint status report stating that they believed that "an administrative resolution of this case is quite possible."  They requested 45 days to file another status report.  On September 1, 2009, the Court ordered the parties to file a further joint status report by October 16, 2009.

On October 16, 2009, respondent filed a separate status report, indicating that additional time was needed for settlement negotiations and requesting 45 days to file another status report.  Petitioners did not file a joint report as required by the Court's September 1, 2009, order, and they did not file a separate status report.

On November 4, 2009, the Court ordered the parties to file a further joint status report by December 4, 2009.  On December 4, 2009, respondent filed a separate status report, indicating that additional time was needed for settlement negotiations and requesting "sufficient time" to complete these negotiations.

**[\*44]** Petitioners did not file a joint report as required by the Court's November 4, 2009, order, and they did not file a separate status report.

On December 9, 2009, the Court ordered the parties to file a further joint status report by February 8, 2010. On February 16, 2010, respondent filed a separate status report, indicating that additional time was needed for settlement negotiations and requesting "sufficient time" to complete these negotiations. Petitioners did not file a joint report as required by the Court's December 9, 2009, order, and they did not file a separate status report.

On February 18, 2010, the Court ordered the parties to file a further joint report by April 19, 2010. On April 15, 2010, respondent moved the Court to extend the due date by at least 30 days, indicating that respondent intended to make various determinations and computations respondent believed would resolve these cases and needed the additional days to complete these determinations and computations. The motion stated that petitioners' counsel did not object to this motion. Petitioners did not file a joint report as required by the Court's February 18, 2010, order, and they did not file a separate status report.

On April 20, 2010, the Court granted respondent's April 15, 2010, motion and ordered the parties to file a joint status report or to submit their stipulated decisions by June 4, 2010. On June 3, 2010, respondent filed a separate status report,

[*45] describing various determinations. Petitioners did not file a joint report as required by the Court's April 20, 2010, order, and they did not file a separate status report.

On June 15, 2010, the Court ordered the parties by July 30, 2010, to file any stipulations of settled issues. The Court further ordered the parties by July 30, 2010, to "file a joint status report indicating the manner in which they propose that any matters not covered by the aforementioned stipulations of settled issues should be resolved." On July 30, 2010, respondent filed a request to extend by 30 days the time to file stipulations and a joint status report. The request stated that petitioners' counsel was in "full agreement" with it.

On August 4, 2010, the Court granted respondent's request and extended until September 3, 2010, the date for filing a stipulation of settled issues and for filing a joint status report indicating the manner in which the parties proposed to resolve any remaining issues. On September 13, 2010, respondent filed a separate status report, indicating that respondent had forwarded to petitioners' counsel a proposed settlement and indicating respondent's determinations and concessions as to various issues. Respondent's report stated: "It is respondent's position that any remaining issues must be determined by the Court. Briefs have already been filed and the positions of the parties set forth. * * * Therefore, respondent's counsel requests 45

[*46] days in which to submit reply briefs." Petitioners did not file a joint report as required by the Court's August 4, 2010, order, and they did not file a separate status report.

On October 13, 2010, Mr. Agostino filed a third motion to withdraw as petitioners' counsel, incorporating the grounds set forward in his second motion to withdraw. On October 28, 2010, petitioners filed separate but largely identical oppositions to Mr. Agostino's motion to withdraw. On December 14, 2010, the Court granted Mr. Agostino's motion to withdraw as petitioners' counsel. The Court ordered that on or before January 13, 2011, the parties file a joint status report indicating the issues that remained in dispute and stating their views as to the manner in which those issues should be resolved. In respondent's separate status report filed January 18, 2011, respondent attached as an exhibit a proposed stipulation of settled issues and renewed respondent's request that the Court set a schedule for reply briefs and that the Court thereafter make its determination on the record, the briefs, and the actions of the parties.

In their separate status report filed January 18, 2011, petitioners responded to respondent's proposed stipulation of settled issues, indicating agreement with some items and disagreement with other items. Contrary to the Court's December 14, 2010, order, petitioners did not state their views as to the manner in which issues that

[*47] remained in dispute should be resolved. Similarly, petitioners have never responded to the Court's orders dated June 15 and August 4, 2010, requiring them to advise the Court of the manner in which they believe remaining unsettled issues should be resolved. It appeared to the Court that petitioners acquiesced in respondent's view, as stated in respondent's September 13, 2010, status report and again in respondent's January 18, 2011, status report, that issues remaining in dispute in these cases should be decided on the existing record after giving the parties an opportunity to file reply briefs. Accordingly, in an order dated January 24, 2011, we deemed petitioners to have waived any right to reopen the record and concluded that any further hearing in these cases was unnecessary.

In response to this Court's order dated January 24, 2011, on February 3, 2011, the Court received from petitioners documents captioned "Petitioner's Suggestion and request for Court order" and "Amended Petitioner's Suggestion and request for Court order". In these documents petitioners appear to request, among other things, an opportunity to present Ms. Zaklama's testimony "Affirming all the canceled checks * * * in the next court session in NYC, NY."

These cases were set for hearing in New York, New York, on February 14, 2011, for the sole and limited purpose of receiving Ms. Zaklama's testimony in the capacity of Mr. Zaklama's fact witness with respect to certain matters described in

[*48] petitioners' offer of proof, filed November 24, 2008, subject to restrictions discussed in this Court's order dated June 3, 2009. Petitioners arrived late to the hearing. After presenting some evidence they announced that they would need additional days to present all of their evidence but could not return to Court the next day because of Ms. Zaklama's work schedule. The parties agreed to continue the trial in Washington, D.C., on March 2, 2011.

At the hearing beginning on March 2, 2011, petitioners appeared in Court with many boxes of documents. Mr. Zaklama sought to question Ms. Zaklama about each of the documents in the boxes, eliciting rote testimony from her that each item represented an ordinary and necessary business expense. Mr. Zaklama indicated that he believed this line of questioning would take him 30 days but that Ms. Zaklama could not stay in Washington, D.C., that long because of her work schedule. In an attempt to expedite matters, at the Court's invitation, the parties filed a stipulation on March 3, 2011, indicating that the parties agreed that Ms. Zaklama's testimony would be that each of the documents in the boxes represented an ordinary and necessary business expense and that respondent waived cross-examination. Notwithstanding this stipulation, on March 4, 2011, petitioners announced that they wished to continue Mr. Zaklama's examination of Ms. Zaklama. The rote testimony resumed and once again the issue arose that Ms.

**[\*49]** Zaklama's work schedule would not permit her to remain in Washington, D.C., to conclude her testimony. At the Court's suggestion, the parties agreed that Ms. Zaklama's further testimony would be submitted in writing by July 15, 2011, and that by September 1, 2011, respondent could submit in writing any response to her further testimony. This understanding was commemorated in the Court's order dated March 18, 2011.

On July 18, 2011, petitioners submitted three notebooks of materials which the Court ordered marked for identification. On September 15, 2011, respondent filed a response. By order dated September 20, 2011, the Court ordered most of the documents in the notebooks excluded from evidence and set a schedule for filing reply briefs, which at petitioners' request was later extended to January 12, 2012. The parties eventually filed their reply briefs.

IV. Witness Testimony

Petitioners each testified in support of their cases. We viewed their testimony as insincere and unreliable. We will not accept the testimony of witnesses at face value to the extent we perceive the testimony to be incredible or otherwise unreliable. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 84 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). We do not rely on petitioners'

[*50] testimony to support their positions in these cases, except to the extent the testimony is corroborated by reliable documentary evidence.  See id.

V.  Burden of Proof

Petitioners bear the burden of proving that the determinations in the notices of deficiency are erroneous.  See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Section 7491(a) sometimes shifts the burden of proof to the Commissioner, but that section does not apply here because we find that petitioners failed to satisfy each requirement set forth in section 7491(a)(2)(A) and (B).[20]

Petitioners argue that respondent has the burden of proof irrespective of any applicability of section 7491 because, they state, respondent never examined their joint Federal income tax returns for the subject years, respondent amended the answer in two of these cases to assert increased deficiencies, and respondent arbitrarily applied the bank deposits method to compute their income (including, they claim, by ignoring evidence of deductions and losses).  We disagree that respondent has the burden of proof on account of any of those reasons. Respondent obviously could not examine the joint tax returns before issuing the

_____

[20]We also conclude that sec. 6201(d) does not apply here.  That section provides that, in any court proceeding, the Commissioner has the burden of producing reasonable and probative evidence to verify an information return if the taxpayer fully cooperates with the Commissioner and raises a reasonable dispute with respect to the information return. This section is inapplicable because, at a minimum, neither petitioner has fully cooperated with respondent as to this matter.

[*51] notices of deficiency given that petitioners first submitted those returns to respondent after these proceedings were commenced. Similarly, respondent amended the answers to reflect the fact that petitioners first informed respondent after the notices of deficiency were issued that they wanted their tax liabilities computed on the basis of joint returns, and the resulting increased deficiencies flowed strictly from petitioners' desire to have their tax liabilities determined on the basis of married individuals filing joint returns (rather than on the basis of married individuals filing separately as would have been the proper treatment had petitioners expressed no such desire). Nor do we agree that respondent's application of the bank deposits method was arbitrary in any of these cases. The Commissioner's determination is normally presumed to be correct (even if it is based on inadmissible evidence). See Anastasato v. Commissioner, 794 F.2d 884, 886-887 (3d Cir. 1986), vacating T.C. Memo. 1985-101. However, where a case is appealable to the Court of Appeals for the Third Circuit, as is this case absent the parties' stipulation to the contrary, a notice of deficiency determining unreported income is not presumed to be correct unless the Commissioner produces evidence linking the taxpayer to the activity generating that income. See id. at 887. Respondent has met that requirement in that the record includes evidence that links the unreported income at issue to petitioners' medical practices, to petitioners'

[*52] rental of real estate, to petitioners' receipt of interest, and to petitioners' withdrawals of funds from their retirement accounts.

We also disagree with petitioners' assertions that respondent applied the bank deposits method improperly by, for example, ignoring evidence of deductions and losses. Petitioners are habitual late filers or nonfilers who failed to cooperate in the calculation of their taxable income for the subject years. They declined to present respondent with books and records from which their tax liabilities could be computed. They declined to provide respondent with their banking information or, for that matter, with any information at all. Respondent was therefore compelled to collect petitioners' financial information mainly through third-party summonses and to reconstruct petitioners' income underlying the notices of deficiency using an indirect method such as the bank deposits method.

Respondent properly applied the bank deposits method by first summoning petitioners' bank information from each bank which during the subject years had issued an information return to petitioners and receiving various bank statements, deposit tickets, and deposited items pursuant to those summonses. Respondent next considered each deposit shown on the statements to be taxable income, except to the extent it was traced to a nontaxable source, and analyzed each deposit shown on the statements to determine whether it was from a nontaxable source (e.g., a

[*53] transfer between petitioners' accounts).  Respondent's analysis eventually led respondent to petitioners' accounts at banks that did not issue petitioners information returns for the subject years, and respondent followed a similar procedure as to petitioners' accounts at those banks.  When respondent was unable to obtain complete documentation for an account, respondent properly made appropriate professional  decisions necessary to calculate petitioners' income.  Respondent asked petitioners to show that any of the deposits that respondent determined were taxable were actually nontaxable, and petitioners supplied no such information.  Respondent also asked petitioners for any information on deductions and received nothing.  We conclude that respondent, in the setting at hand, applied the bank deposits method properly.[21]  While petitioners may quibble that respondent's application of that method to the subject years did not determine their taxable income with pinpoint accuracy, the fact of the matter is that petitioners have no one to blame but themselves.  Petitioners, each of whom is a well-educated professional, realized substantial amounts of income during the subject years and instead of timely reporting that income on Federal income tax

_____

[21]Petitioners also assert that the burden of proof as to the taxability of the bank deposits is on respondent for other reasons which include claimed noncompliance with sec. 7522, the raising of new matter under Rule 142(a), and the principle of United States v. Janis, 428 U.S. 433, 440 (1976), and Helvering v. Taylor, 293 U.S. 507 (1935).  We reject these assertions for reasons similar to those previously stated.

[*54] returns as the Code requires, consciously chose first not to timely file any such return and second not to cooperate in respondent's determinations of their income for those years.

## VI.  Petitioners' Other Procedural Arguments

Petitioners make various additional procedural arguments as to the substance of the record at hand.  First, petitioners argue that justice requires that the Court relieve them of all matter that was deemed stipulated in these cases, as well as some matter they actually stipulated.  Alternatively, petitioners argue, the Court should relieve them from various stipulated facts which, petitioners assert, are "clearly contrary to the record".  We disagree on both points.  Petitioners previously filed a motion on September 18, 2007, to relieve them of the referenced matter and stipulations of fact, and we denied that motion on June 3, 2009.  Petitioners have presented us with no bona fide reason why we should reconsider our ruling or otherwise revisit this subject.  Nor does the record establish that any of the stipulated facts are "clearly contrary to the record".

Second, petitioners ask the Court to reconsider our exclusion of certain documentary evidence because, they state, the Court erred in excluding those documents.  Alternatively, petitioners ask the Court to reopen the record to admit other exhibits or to order a retrial.  We decline both requests.  Petitioners' requests

[*55] rest on the fact that they represented themselves throughout the audit and throughout much of these proceedings. The Court on numerous occasions suggested to petitioners that they retain counsel for these proceedings. The counsels that they obtained later withdrew, citing petitioners' lack of cooperation. Petitioners consciously and voluntarily opted to represent themselves throughout much of these proceedings (including throughout the trial). We have liberally construed our Rules on petitioners' behalf, and we have liberally applied our Rules and procedures to them. We also have gone to other extremes to allow petitioners an opportunity to build a meaningful record. Petitioners, in turn, have chosen regularly and routinely to fail to comply with our orders. In addition, they have failed to make a reasonable attempt to comply with our Rules and procedures.

Third, petitioners ask the Court to take judicial notice as to rental property expenses, deeds of conveyance, and various other documents. We decline to do so. Petitioners filed a motion requesting the same on August 23, 2007, and we denied that motion on June 3, 2009. We also on June 3, 2009, denied petitioners' request to consider as evidence certain summaries included in their opening pretrial brief or alternatively to reopen the record to admit those summaries as evidence. While petitioners ask the Court to reconsider that action anew, we decline to do so. We also decline petitioners' request to amend the pleading to conform to those

[*56] summaries or to the joint income tax returns that they prepared well into these proceedings.

Fourth, petitioners argue that they are entitled to a new trial because their procedural and substantive due process rights have been violated. We disagree. Each petitioner is a well-educated professional who has been a regular litigant in this Court throughout the last two decades, and they each have a solid understanding of the proceedings at hand (including the need to present evidence and to adhere to our Rules). Petitioners also have shown their knowledge of the judicial process by commencing civil actions in other tribunals as well. In addition, throughout these proceedings, the Court has given petitioners more than enough opportunities to prosecute their cases meaningfully in accordance with our Rules, and we have otherwise liberally applied our Rules to accommodate petitioners to more than a reasonable extent.[22] Each petitioner also has been strongly advised that he and she should retain counsel to prosecute their cases for them but has consciously chosen during most of these proceedings to prosecute these cases on his or her own behalf. Any detrimental consequences that petitioners claim to have suffered are the result of their own actions or inactions.

---

[22]We note, for example, that we have repeatedly continued the beginning and end of the trial of these cases and that we previously reopened the record to receive Ms. Zaklama's testimony in her capacity as a fact witness with respect to certain matters.

**[\*57]** VII.  Unreported Income

A.  Background

We now turn to petitioners' substantive challenges to respondent's determination of their unreported income.  Respondent analyzed numerous deposit slips related to petitioners' bank accounts and accompanying checks payable to petitioners.  Respondent identified the payers and the notations on the checks, the person or persons to whom the checks were made payable, and the person or persons who endorsed the checks.  Respondent determined that petitioners failed to report substantial income primarily from their medical practices, from their collection of rent, from their receipt of interest, and from their early withdrawals of funds from their retirement accounts.  We address each type of the determined income in turn.

B.  Self-Employment Income

Respondent determined that Ms. Zaklama was a self-employed anesthesiologist and that she failed to report nonemployee compensation of $483,591, $487,873, $536,145, $628,500, $694,986, and $815,963 for the subject years, respectively.  Respondent allowed Ms. Zaklama to deduct $38,800 of self-employment expenses for each year and determined that the balance of that compensation ($444,791, $449,073, $497,345, $589,699, $656,186, and $777,163,

[*58] respectively)[23] was includible in Ms. Zaklama's gross income and subject to self-employment tax. Self-employment income is an item of gross income, and self-employed individuals are subject to self-employment tax to the extent that their net income from self-employment equals or exceeds $400. See secs. 1401 and 1402; sec. 1.1401-1(c), Income Tax Regs.

Petitioners observe that some of the nonemployee compensation reflects funds deposited into BOA3886 and FSB5068 and assert that those deposits are taxable to their son J.Z. (rather than to petitioners) because his Social Security number is on those accounts. We disagree that any of the determined nonemployee compensation is taxable to J.Z. for the reason petitioners proffer. First, as a point of fact, the record does not establish (nor do we find) that J.Z.'s Social Security number was the taxpayer identification number on FSB5068. Second, as a point of law, it is a well-settled principle of tax law that the tax liability for income from property attaches to the property's owner, and that taxpayers are precluded from avoiding taxation on their income by assigning the income to another. See, e.g., Lucas v. Earl, 281 U.S. 111 (1930). The mere fact, therefore, that a Social Security number that is listed on a bank account may be that of an individual other than the taxpayer does not necessarily mean that the amounts deposited into the account are

---

[23]Respondent also credited Ms. Zaklama with $1 more of expenses for 1995.

[*59] taxable to someone other than the taxpayer. This is especially so here where one or both of petitioners' names was on the disputed accounts, and the record fails to persuade us that the disputed deposits were not self-employment income earned by Ms. Zaklama as respondent determined. Nor do we find that any of those deposits represented income generated by J.Z., e.g., none of the checks deposited into the accounts had J.Z.'s name as the payee.

Petitioners also argue that any amount deposited into the bank accounts in the name of SZMDPC should not be taxed to them because, they state, the income is actually that of Ms. Zaklama's professional corporation.[24] We are not persuaded. Respondent observed that many checks deposited into SZMDPC's accounts were made out to Ms. Zaklama personally and that SZMDPC has never filed a Federal income tax return or withheld any payroll tax. Moreover, as is true under the doctrine of Lucas v. Earl, 281 U.S. 111, the mere fact that a name that is listed on a bank account may be that of an individual other than the taxpayer does not necessarily mean that the amounts deposited into the account are taxable to someone other than the taxpayer.

We find on the basis of our examination of the entire record before us that petitioners have failed to carry their burden of establishing that the deposits

---

[24]Petitioners assert that all income deposited into FFB0488, FFB0991, FFB2740, and FFB5068 is that of SZMDPC and not that of Ms. Zaklama.

[*60] totaling $483,591, $487,873, $536,145, $628,500, $694,986, and $815,963 for the subject years, respectively, are not properly characterized as gross receipts from Ms. Zaklama's self-employment. We further find accordingly that these amounts are subject to self-employment tax as respondent determined.

Petitioners argue that Ms. Zaklama is entitled to deduct business expenses related to her self-employment income in amounts greater than respondent allowed.[25] Section 162(a) generally provides that taxpayers may deduct all of the ordinary and necessary expenses of a trade or business. Deductions, however, are strictly a matter of legislative grace, and taxpayers must satisfy the specific requirements for any deduction claimed for a taxable year. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioners argue that justice requires that the Court allow Ms. Zaklama to deduct additional deductions for her business. Petitioners point to documentation which is not in evidence and the rule espoused in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), to support a greater deduction of expenses for each year. Under the Cohan rule, we may allow a claimed expense

---

[25]Petitioners' opening brief does not directly set forth a specific amount of expenses that they desire to deduct for each year. The brief, however, requests that the Court allow them to deduct the amounts set forth in the summary report discussed above. The report states that petitioners are entitled to deduct for the respective years additional self-employment expenses of $3,249, $3,857, $2,751, $20,331, $7,041, and $1,838.

**[\*61]** where the taxpayer is unable to fully substantiate it, but only if we have an evidentiary basis to do so.  See id.; Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

We disagree that Ms. Zaklama is entitled to deduct business expenses in amounts greater than respondent allowed.  Respondent allowed Ms. Zaklama to deduct $38,800 of business expenses for each year, and we are not persuaded that Ms. Zaklama is entitled to any additional amount.  Petitioners mainly rely on documents that are not in evidence; they did not comply with our order directing them to present their substantiation of claimed deductions in an organized, logical, and numbered fashion.  While petitioners have cited some documents in the record as support for their claim to greater deductions, they have not clearly articulated the specific portions of those documents upon which they rely.  We have nevertheless painstakingly sifted through the record in the light of petitioners' citations of it, yet we remain unpersuaded that petitioners are entitled to deduct more than $38,800 of self-employment expenses for each year as respondent allowed.

In the same vein, we do not believe it appropriate to apply the Cohan rule because the record lacks sufficient credible evidence to provide a basis upon which we may reliably estimate greater expenses than respondent allowed.  See Vanicek

[*62] v. Commissioner, 85 T.C. at 742-743. We also bear in mind that certain expenses (e.g., automobile expenses, cellular telephones, computer equipment, or any property of a type generally used for purposes of entertainment, recreation, or amusement) and travel expenses (including meals and lodging while away from home) may not be estimated because of the strict substantiation requirements of section 274(d). See secs. 274(d), 280F(d)(4); Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969). To substantiate a deduction for those expenses, a taxpayer must maintain adequate records or present evidence corroborating his or her own statement to show the amount of the expense, the time and place of use of the listed property, and the business purpose of the use. See sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Petitioners have failed to do so.

C. Other Unreported Income

Respondent determined in Ms. Zaklama's notice of deficiency that she realized unreported income of $11,122, $22,520, $8,502, $50,003, $11,662, and $2,840 during the subject years, respectively. Respondent determined in Mr. Zaklama's notice of deficiency that he realized unreported income of $120,695, $110,020, and $88,250 during 1995 through 1997, respectively. Some of the unreported income determined in the notices of deficiency represented income that

[*63] respondent determined was realized by both petitioners during 1995 through 1997. Respondent included that income in each notice of deficiency and later, to reflect petitioners' desire to file joint tax returns, made adjustments so that the income would be taxed only once. As adjusted, respondent's determination was that petitioners' unreported income for the subject years is $11,122, $22,520, $8,502, $155,523, $110,720, and $88,965, respectively.[26] Petitioners do not directly challenge this determination (other than for reasons we have previously rejected). We sustain it without further comment. See Rules 142(a)(1), 149(b).

D. Rental Income

Respondent determined in Ms. Zaklama's notice of deficiency that she had unreported rental income of $21,113, $11,460, $13,428, $16,997, $28,583, and $11,136 for the subject years, respectively. Respondent determined in Mr. Zaklama's notice of deficiency that he had unreported rental income of $16,997, $28,583, and $11,136 for 1995 through 1997, respectively. Petitioners do not directly challenge respondent's determinations of the amounts of gross rental income they realized during the subject years (other than for reasons we have previously rejected). They invite the Court, however, to approximate deductions

---

[26]Respondent determined in the notice of deficiency issued to Ms. Zaklama that her gross income for 1997 includes $715 of income from the City of New Jersey. The city issued Ms. Zaklama a Form 1099-MISC reporting that it paid her $715 as a prize or reward during 1997. The $88,965 includes the $715.

**[\*64]** to offset this income. We decline this invitation with one exception. Petitioners have had ample opportunities to produce the requisite documentation to support any expense which they believe is related to their real estate business. But for the referenced exception, they declined to do so. In addition, as is the case with Ms. Zaklama's business expenses, petitioners generally rely on documents that are not in evidence, they did not comply with our orders, and they have not built a sufficient evidentiary foundation from which we can apply the Cohan rule to approximate deductions.

The single exception is that the record contains information returns reporting that petitioners paid mortgage interest to various independent payees. Petitioners point to the joint exhibits that include these information returns and ask the Court to allow them to deduct the amounts of the reported mortgage interest. The reported interest is $9,466 for 1995, $16,741 for 1995, $6,670 for 1996, and $10,541 for 1997. Respondent rejoins that petitioners may not deduct any of this interest because they disclaim any ownership interests in the rental properties. Also, respondent notes, the Court precluded petitioners from introducing into evidence certain documents connected with the rental real estate.

We agree with petitioners that they may deduct the mortgage interest reported on the referenced information returns. The information returns were

**[\*65]** included in evidence through the parties' stipulation of Exhibits 45-J, 46-J, 47-J, and 51-J as joint exhibits, and we fail to see any legitimate reason in the setting at hand why we should not conclude that petitioners in fact paid the amounts that the third parties reported petitioners' having paid to them as mortgage interest. Notwithstanding petitioners' repeated claims that they had no direct ownership interests in the properties but were nonetheless paying the properties' expenses, the fact of the matter is that respondent determined that one or both petitioners owned the properties and we have sustained that determination. We conclude that petitioners are therefore entitled to deduct the expenses that they established they paid as to the properties.

E. Interest Income

Respondent determined in Ms. Zaklama's notice of deficiency that she realized interest income of $480, $231, $148, $469, $291, and $35 during the subject years, respectively. Respondent determined in Mr. Zaklama's notice of deficiency that he realized interest income of $329, $302, and $618 during 1995 through 1997, respectively. Petitioners do not directly challenge this determination. We sustain it without further comment. See Rules 142(a)(1), 149(b).

**[\*66]** F. <u>Withdrawals From Retirement Accounts</u>

Respondent determined in Ms. Zaklama's notice of deficiency that she failed to report taxable withdrawals from her retirement accounts of $30,000 in 1992 and $92,830 in 1996. Respondent determined in Mr. Zaklama's notice of deficiency that he failed to report taxable withdrawals from his retirement account of $51,371 in 1996. All of these withdrawals are taxable, respondent asserts, because petitioners withdrew the amounts from their retirement accounts. Section 408(d)(1) generally provides that any amount withdrawn from an IRA is taxable as an item of gross income. <u>Cf.</u> sec. 402(a) (providing similarly that any amount withdrawn from a Keogh plan is generally taxable as an item of gross income).

Petitioners argue that the 1992 and 1996 withdrawals are nontaxable. As to the $30,000, petitioners state that they received no deduction under section 219 as to that amount when they first contributed these funds in 1990. Section 408(d)(4)(B) provides that a contribution withdrawn from an IRA is not taxable as an item of gross income if a deduction is not allowed as to the contribution. Alternatively, petitioners state, $29,500 of the $30,000 is nontaxable because it was timely rolled over to another account. Section 408(d)(3)(A) generally provides that an individual's withdrawal from an IRA is not taxable as an item of

[*67] gross income to the extent that the withdrawal is contributed to another IRA of the individual no later than the 60th day after the day of the withdrawal. See also sec. 1.408-4(b)(1), Income Tax Regs.; cf. sec. 402(c) (providing similar rules in the case of certain rollovers from a Keogh plan). Petitioners argue that the $92,830 withdrawal is not includible in Ms. Zaklama's gross income because, they state, that amount was timely redeposited on March 1, 1996 (or alternatively, they state, she never received any deduction under section 219 as to that amount). Petitioners argue that the $51,371 withdrawal is not taxable to Mr. Zaklama because, they state, he never received any deduction under section 219 as to that amount.

As another alternative, petitioners argue that they are entitled to deduct $30,000 in each of the subject years as contributions to their retirement accounts. This is so, petitioners contend, because they contributed at least that amount in each of those years to qualified plans and claimed corresponding deductions on their joint returns for those years. As petitioners see it, they may deduct any amount claimed on those returns as a retirement plan contribution because the notices of deficiency did not disallow those items. Petitioners claim that bank statements included in the record show that the amounts were deposited into a

**[*68]** qualified account, but they do not point to the specific pages in the voluminous record at hand where, as they claim, this showing may be found.

Petitioners further argue that the additional 10% tax is inapplicable because, they state, the distributions were nontaxable. Section 72(t) imposes an additional 10% tax on early distribution from a qualified retirement account.

We agree with petitioners in part and with respondent in part. First, we agree with petitioners that the $92,830 was timely redeposited so as to fall within the rollover exception of section 408(d)(3). While section 408(d)(1) generally provides that any amount distributed from an IRA is treated as an item of gross income, section 408(d)(3) excepts from that provision "any amount * * * distributed out of an individual retirement account" to the beneficiary that is redeposited into an IRA of the beneficiary no later than 60 days after the day of the distribution. Respondent claims that section 408(d)(3) is inapplicable because Ms. Zaklama did not roll over the same money that she received in the distribution. We do not read that section as narrowly. See sec. 1.408-4(b), Income Tax Regs. (providing that the 60-day-rollover rule may be met where "the entire amount received (including the same amount of money and any other property) is paid into an individual retirement account"); cf. Lemishow v. Commissioner, 110 T.C. 110 (1998) (holding that 60-day-rollover rule was not

[*69] met to the extent that the taxpayer used distributed money to purchase stock and then deposited the stock within the 60-day period). Respondent also wrongly claims that the $92,830 was redeposited one day late. By our count, the redeposit occurred on the 59th day; i.e., the day that Ms. Zaklama transferred the funds to the bank. See Wood v. Commissioner, 93 T.C. 114, 121-122 (1989) (holding that the rollover of assets was complete when the taxpayer delivered the assets to an IRA's trustee).

We agree with respondent that petitioners' 1992 gross income includes the $30,000 withdrawal and that their 1996 gross income includes the $42,711 and $8,660 withdrawals, as respondent determined. The record does not persuade us that any of those amounts were rolled over timely into a qualified account, as petitioners assert. Nor does the record persuade us that petitioners never deducted those amounts under section 219, as they assert. Nor are we persuaded that petitioners are entitled to deduct $30,000 in each of the subject years as contributions to their retirement accounts.

We also agree with respondent that the additional 10% tax under section 72(t)(1) applies as to the withdrawals includible in petitioners' gross income.

[*70] Petitioners have not proven to the contrary.[27] See Bunney v. Commissioner, 114 T.C. 259, 265-266 (2000).

VIII. Itemized Deductions

Petitioners assert that they are entitled to deduct as itemized deductions bankruptcy expenses and certain other expenses reported on Schedule A, Itemized Deductions. We disagree. Petitioners rely on documents that are not in evidence. In addition, we decline to apply the Cohan rule to approximate itemized deductions because petitioners failed to comply with our orders, and they have not built a sufficient evidentiary foundation from which we can apply the Cohan rule to approximate any itemized deductions to which they are entitled. We also note that petitioners originally filed no income tax returns for the subject years and that even the joint returns for the subject years which they submitted during these proceedings did not report any itemized deductions for the corresponding years. Having failed to file returns and thereby having failed to elect to claim itemized deductions on their returns, they are not entitled to do so

---

[27]Regardless of whether the additional tax under sec. 72(t) is a penalty or an additional amount for which respondent has a burden of production under sec. 7491(c), respondent has satisfied any such burden by showing that petitioners were not 59-1/2 when they received the distributions. See Lowery v. Commissioner, T.C. Memo. 2010-167, aff'd, 442 Fed. Appx. 79 (5th Cir. 2011).

[*71] in these proceedings.  See, e.g., Jahn v. Commissioner, T.C. Memo. 2008-141, aff'd, 431 Fed. Appx. 210 (3d Cir. 2011); see also sec. 63(e)(2) (a taxpayer's election to itemize "shall be made on the taxpayer's return").

IX.  Additions to Tax

We now turn to the additions to tax under sections 6651(a)(1) and 6654. Section 6651(a)(1) imposes an addition to tax for failure to file a Federal income tax return timely, unless such failure was due to reasonable cause and not due to willful neglect.  Absent the Commissioner's granting of an extension of time to file a Federal income tax return, a Federal income tax return is timely filed in the case of calendar year taxpayers such as petitioners if the return is filed on or before April 15 of the year following the year to which the return pertains.  Sec. 6702.  Section 6654(a) imposes an addition to tax on an individual taxpayer who underpays a required installment of estimated tax.  This addition to tax is determined by reference to four required installment payments of the taxpayer's estimated tax liability.  Sec. 6654(c)(1).  In general, for a taxpayer to avoid an addition to tax under section 6654, each required installment of estimated tax must equal 25% of the "required annual payment".  Sec. 6654(d)(1)(A).  Where no return is filed in the preceding year, the required annual payment is equal to 90% of the tax shown on the taxpayer's return for the current year (or, if no

**[\*72]** return is filed for the current year as well, 90% of the tax due for such year). Sec. 6654(d)(1)(B). This addition to tax is mandatory unless the taxpayer establishes that one of the exceptions listed in section 6654(e) applies. See Recklitis v. Commissioner, 91 T.C. 874, 913 (1988).

Respondent bears the burden of producing sufficient evidence indicating that it is appropriate to impose these additions to tax. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). It is appropriate to impose a section 6651(a)(1) addition to tax for a year for which a taxpayer is required to file a Federal income tax return and fails to file the return timely. See Higbee v. Commissioner, 116 T.C. at 447; see also Bassett v. Commissioner, 100 T.C. 650, 657 (1993), aff'd, 67 F.3d 29 (2d Cir. 1995). It is appropriate to impose a section 6654 addition to tax for a year for which a taxpayer has an obligation to make one or more estimated tax payments and fails to do so. See Wheeler v. Commissioner, 127 T.C. 200, 211 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

When and to the extent that respondent meets his burden of production, the burden of proof then falls upon petitioners (except for the increased portions of the additions to tax raised in each amendment to answer).[28] See Higbee v.

---

[28]Respondent agrees that respondent bears the burden of proof as to the increased portions of the additions to tax raised in each amendment to answer, and we proceed accordingly.

[*73] Commissioner, 116 T.C. at 447, 449.  Petitioners' burden as to the additions to tax under section 6651(a)(1) requires that they prove that their failure to file timely Federal income tax returns was due to reasonable cause and not due to willful neglect.  See id.  Petitioners' burden as to the additions to tax under section 6654 requires that they establish that they made the required minimum payments or that they otherwise meet one of the referenced exceptions.  See McLaine v. Commissioner, 138 T.C. 228, 249-250 (2012); Verduzco v. Commissioner, T.C. Memo. 2010-278.

Petitioners argue that respondent failed to meet respondent's burden of production under section 7491(c).  We disagree.  The record establishes (and we find as facts) that petitioners were required to file timely Federal income tax returns for each subject year and failed to do so.  In addition, as to the addition to tax under section 6654, the record includes certified transcripts that indicate that petitioners failed to make the required minimum payments.  We conclude that respondent has met respondent's burden of production as to each addition to tax.  We also conclude that petitioners will be liable for the section 6651(a)(1) additions to tax (including with respect to any increased amount listed in the amendments to answers) absent a showing of reasonable cause and not willful

**[\*74]** neglect and that petitioners will be liable for the section 6654 additions to tax absent the applicability of one of the referenced exceptions.[29]

Petitioners argue that the additions to tax under section 6651(a)(1) are inapplicable because, they state, they reasonably relied upon a bankruptcy trustee to file the requisite tax returns or alternatively Mr. Zaklama was in bad health. We reject both of these arguments. While we are mindful that petitioners during 1993 filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, see Zaklama v. Commissioner, T.C. Memo. 1995-587, the filing of the petition did not eliminate petitioners' responsibility to file timely Federal income tax returns on behalf of themselves, see sec. 1398 (providing that an individual debtor and his or her bankruptcy estate are separate taxable entities); Olsen v. Commissioner, T.C. Memo. 1995-319; see also United States v. Boyle, 469 U.S. 241 (1985) (stating that the responsibility to file a timely Federal tax return is a nondelegable duty). Nor does the record persuade us that Mr. Zaklama was in such "bad health" as to eliminate petitioners' responsibility to file timely returns for each of the subject years. To be sure, Mr. Zaklama's alleged bad health did

---

[29]Respondent has met his burden of proof as to the increased amounts listed in each amendment to answer in that the record establishes that petitioners did not timely file Federal income tax returns for the subject years and that they failed to make required estimated tax payments. See Cobaugh v. Commissioner, T.C. Memo. 2008-199; Bhattacharyya v. Commissioner, T.C. Memo. 2007-19; Howard v. Commissioner, T.C. Memo. 2005-144.

[*75] not prevent him from vigorously prosecuting his lawsuits in this and other courts. The record also does not establish that Ms. Zaklama was unable to file the requisite returns for the subject years. We sustain respondent's determinations (as amended) as to the imposition of the section 6651(a)(1) additions to tax.

Respondent concedes that the section 6654 addition to tax does not apply for 1992. As to the remaining years, the record does not establish that any of the referenced exceptions applies for any of those years. We conclude that petitioners have failed to meet their burden of proof on this issue, and we sustain respondent's determination (as adjusted) as to the applicability of the section 6654 additions to tax. See Verduzco v. Commissioner, T.C. Memo. 2010-278.

X. Section 6673 Penalty

Petitioners have failed to cooperate with respondent from the time of the audit through the time that these cases were finally submitted to the Court. Such lack of cooperation suggests that petitioners maintained these proceedings primarily for delay and that they unreasonably failed to pursue available administrative remedies.

Section 6673(a)(1) provides that the Court may require a taxpayer to pay a penalty not in excess of $25,000 whenever it appears to the Court that:

[*76] (1) proceedings in this Court are instituted or maintained by a taxpayer primarily for delay, (2) a taxpayer's position is frivolous or groundless, or (3) a taxpayer unreasonably failed to pursue available administrative remedies. Section 6673 serves in part as "a penalty statute designed to deter taxpayers from bringing frivolous or dilatory suits". Sauers v. Commissioner, 771 F.2d 64, 68 (3d Cir. 1985), aff'g T.C. Memo. 1984-367.

Respondent did not request that the Court impose a penalty pursuant to section 6673, and we exercise our discretion not to consider or impose a section 6673 penalty on petitioners in these cases. We sternly warn petitioners, however, that the Court will consider sanctioning either or both of them in accordance with section 6673(a)(1) should he, she, or they institute or maintain a proceeding in this Court primarily for delay, advance frivolous or groundless positions in this Court, or unreasonably fail to pursue available administrative remedies.

**[\*77]** XI.  <u>Conclusion</u>

We uphold respondent's determinations to the extent stated.[30]  We have

considered all arguments the parties made for contrary holdings and, to the extent

not discussed, we have rejected those arguments as without merit.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.

---

[30]On brief petitioners appear to request an abatement of statutory interest
otherwise owing on their liabilities resulting from these cases.  We lack jurisdiction
to decide that issue.  The Court's jurisdiction to redetermine a tax deficiency
generally does not allow the Court to abate statutory interest.  <u>See</u> <u>Bourekis v.</u>
<u>Commissioner</u>, 110 T.C. 20, 24-25 (1998).  Although sec. 6404(h) gives the Court
jurisdiction to review the Commissioner's denial of requests to abate interest, that
jurisdiction is inapplicable where, as here, the Commissioner has not made a final
determination as to the abatement of interest.  <u>See</u> sec. 6404(h); Rule 280(b); <u>Gati</u>
<u>v. Commissioner</u>, 113 T.C. 132, 134 (1999); <u>Bourekis v. Commissioner</u>, 110 T.C.
at 25-26.

APPENDIX

SUMMARY OF RESPONDENT'S BANK DEPOSITS ANALYSES

<u>1992 Ms. Zaklama</u>

| | BOA3886 | FFB2740 | Total |
|---|---|---|---|
| Deposits | $66,985 | $483,616 | $550,601 |
| Less: | | | |
| Nontaxable items | (1,500) | -0- | (1,500) |
| Mr. Zaklama's income | (3,250) | -0- | (3,250) |
| Unreported income | (11,122) | -0- | (11,122) |
| Rental income | (21,113) | -0- | (21,113) |
| Retirement plan withdrawal | (30,000) | -0- | (30,000) |
| Other | -0- | (25) | (25) |
| Nonemployee compensation | -0- | 483,591 | 483,591 |
| Self-employment expenses | --- | --- | (38,800) |
| Self-employment net income | --- | --- | 444,791 |

<u>1993 Ms. Zaklama</u>

| | BOA3721 | BOA3886 | FFB0488 | FFB2740 | Total |
|---|---|---|---|---|---|
| Deposits | $3,206 | $28,531 | $400,296 | $157,654 | $589,687 |
| Less: | | | | | |
| Transfers between accounts | (1,200) | (10,000) | (25,000) | (30,500) | (66,700) |
| Nontaxable items | -0- | -0- | -0- | (1,128) | (1,128) |
| Unreported income | (2,000) | (5,520) | (15,000) | -0- | (22,520) |
| Miscellaneous small deposits | (6) | -0- | -0- | -0- | (6) |
| Rental income | -0- | (11,460) | -0- | -0- | (11,460) |
| Nonemployee compensation | -0- | 1,551 | 360,296 | 126,026 | 487,873 |
| Self-employment expenses | --- | --- | --- | --- | (38,800) |
| Self-employment net income | --- | --- | --- | --- | 449,073 |

**[*79]**

1994 Ms. Zaklama

| | BOA3721 | BOA3886 | CB9250 | FFB0488 | FFB1604 | Total |
|---|---|---|---|---|---|---|
| Deposits | $2,000 | $15,793 | $68,843 | $221,847 | $415,339 | $723,822 |
| Less: | | | | | | |
| Transfers between accounts | -0- | (11,118) | (46,700) | -0- | (100,000) | (157,818) |
| Nontaxable items | -0- | -0- | (346) | -0- | (2,007) | (2,353) |
| Redeposits | -0- | -0- | (500) | -0- | -0- | (500) |
| Mr. Zaklama's income | -0- | -0- | (5,077) | -0- | -0- | (5,077) |
| Unreported income | (2,000) | (3,800) | (2,702) | -0- | -0- | (8,502) |
| Rental income | -0- | (875) | (12,553) | -0- | -0- | (13,428) |
| Nonemployee compensation | -0- | -0- | 965 | 221,847 | 313,332 | [1]536,145 |
| Self-employment expenses | --- | --- | --- | --- | --- | (38,800) |
| Self-employment net income | --- | --- | --- | --- | --- | 497,345 |

[1]We note a $1 discrepancy in the calculation of this number.

1995 Ms. Zaklama

| | BOA3721 | BOA3886 | CB9250 | FFB0991 | FFB1604 | FFB2520 | Total |
|---|---|---|---|---|---|---|---|
| Deposits | $875 | $224,873 | $15,900 | $500 | $769,501 | $139,412 | $1,151,061 |
| Less: | | | | | | | |
| Transfers between accounts | -0- | (34,163) | (4,600) | -0- | (80,000) | (139,412) | (258,175) |
| Nontaxable items | -0- | -0- | -0- | -0- | (959) | -0- | (959) |
| Both petitioners' income | -0- | (6,775) | (9,600) | -0- | -0- | -0- | (16,375) |
| Mr. Zaklama's income | -0- | (11,948) | (200) | -0- | (60,448) | -0- | (72,596) |
| Ms. Zaklama's income | -0- | (18,128) | -0- | (500) | (15,000) | -0- | (33,628) |
| Retirement plan withdrawals | -0- | (122,769) | -0- | -0- | -0- | -0- | (122,769) |
| Other | -0- | (151) | -0- | -0- | -0- | -0- | (151) |
| Rental income | 875 | (9,545) | (1,500) | -0- | (5,988) | -0- | (17,908) |
| Nonemployee compensation | -0- | 21,394 | -0- | -0- | 607,106 | -0- | 628,500 |
| Self-employment expenses | --- | --- | --- | --- | --- | --- | 38,800) |
| Self-employment net income | --- | --- | --- | --- | --- | --- | 589,700 |

[*80]

1995 Mr. Zaklama

| | BOA3721 | BOA3886 | CB9250 | FFB1604 | NWB8531 | Total |
|---|---|---|---|---|---|---|
| Mr. Zaklama's deposits | $875 | $28,268 | $15,900 | $66,436 | $31,724 | $143,203 |
| Less: | | | | | | |
| Transfers between accounts | -0- | -0- | (4,600) | -0- | -0- | (4,600) |
| Rental income | (875) | (9,545) | (1,500) | (5,988) | -0- | (17,908) |
| Unreported income | -0- | 18,723 | 9,800 | 60,448 | 31,724 | 120,695 |

1996 Ms. Zaklama

| | BOA3886 | CB9250 | FFB1604 | FFB2520 | FSB5068 | NWB8531 | Total |
|---|---|---|---|---|---|---|---|
| Deposits | $73,281 | $15,716 | $519,925 | $84,500 | $424,084 | $33,483 | $1,150,989 |
| Less: | | | | | | | |
| Transfers between accounts | (10,800) | (4,550) | (105,252) | (84,500) | -0- | -0- | (205,102) |
| Nontaxable items | -0- | -0- | (113,589) | -0- | -0- | -0- | (113,589) |
| Both petitioners' income | (10,963) | -0- | -0- | -0- | -0- | -0- | (10,963) |
| Ms. Zaklama's income | -0- | (700) | -0- | -0- | -0- | -0- | (700) |
| Mr. Zaklama's income | (41,150) | -0- | (21,266) | -0- | -0- | (21,422) | (83,838) |
| Rental income | (10,368) | (10,466) | (8,916) | -0- | -0- | (12,061) | (41,811) |
| Nonemployee compensation | -0- | -0- | 270,902 | -0- | 424,084 | -0- | 694,986 |
| Self-employment expenses | --- | --- | --- | --- | --- | --- | (38,800) |
| Self-employment net income | --- | --- | --- | --- | --- | --- | 656,186 |

[*81]

1996 Mr. Zaklama[1]

| | BOA3886 | CB9250 | FFB1604 | NWB8531 | TC1216 | Total |
|---|---|---|---|---|---|---|
| Mr. Zaklama's deposits | $73,281 | $15,716 | $30,668 | $33,483 | $15,220 | $168,368 |
| Less: | | | | | | |
| Transfers between accounts | (10,800) | (4,550) | -0- | -0- | -0- | (15,350) |
| Other | -0- | (700) | -0- | -0- | -0- | (700) |
| Rental income | (10,368) | (10,466) | (9,402) | (12,061) | -0- | (42,297) |
| Unreported income | 52,112 | -0- | 21,266 | 21,422 | 15,220 | 110,021 |

[1]We note the $1 discrepancy in the column that pertains to BOA3886 (and thus in the total column as well).

1997 Ms. Zaklama

| | BOA3886 | FSB5068 | Total |
|---|---|---|---|
| Deposits | $11,593 | $815,963 | $827,556 |
| Less: | | | |
| Transfers between accounts | (6,000) | -0- | (6,000) |
| Both petitioners' income | (2,840) | -0- | (2,840) |
| Rental income | (2,730) | -0- | (2,730) |
| Other | (23) | -0- | (23) |
| Nonemployee compensation | -0- | 815,963 | 815,963 |
| Self-employment expenses | --- | --- | (38,800) |
| Self-employment net income | --- | --- | 777,163 |

1997 Mr. Zaklama

| | BOA3886 | NWB8531 | PNC1904 | TC5492 | Total |
|---|---|---|---|---|---|
| Mr. Zaklama's deposits | $11,593 | $689 | $21,452 | $63,269 | $97,003 |
| Less: | | | | | |
| Other | (23) | -0- | -0- | -0- | (23) |
| Transfers between accounts | (6,000) | -0- | -0- | -0- | (6,000) |
| Rental income | (2,730) | -0- | -0- | -0- | (2,730) |
| Unreported income | 2,840 | 689 | 21,452 | 63,269 | 88,250 |